Dated: February 03, 2021

ORDERED.

Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | Case No. 3:19-bk-1555-JAF |
| MARCUS L. BROOKS and TONYA M. BROOKS, | Chapter 7 |
| Debtors. _____/ | |
| NANCY J. GARGULA, UNITED STATES TRUSTEE, | |
| Plaintiff, | |
| v. | Adv. No. 3: 19-ap-143-JAF |
| MARCUS L. BROOKS and TONYA M. BROOKS, | |
| Defendants. _____/ | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This proceeding came before the Court upon the United States Trustee's Complaint Objecting to Entry of the Debtors' Discharge. The Court conducted a trial on the Complaint on

October 19, 2020. In lieu of oral argument, the Court took the matter under advisement and directed the parties to file post-trial memoranda. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### **Findings of Fact**

On April 25, 2019, the Defendants filed this Chapter 7 bankruptcy petition, along with their schedules and Statement of Financial Affairs ("SOFA"). (Pl.'s Ex. 5). The Defendants' bankruptcy schedules indicate that, at the time of the filing, Mrs. Brooks was a business analyst for Bank of America, and Mr. Brooks was unemployed. (Id.) In response to question 4 of the Defendants' bankruptcy petition, which requires a debtor to list any business names or Employer Identification Numbers they have used in the last 8 years, the Defendants indicated they had not used any. (Id.) In response to question 12 of their bankruptcy petition, which asks whether a debtor is a sole proprietor of a business, the Defendants answered no. (Id.) In response to question 19 of their Schedule A/B, which asked the Defendants whether they had an interest in any business, the Defendants indicated no. (Id.) In response to question 37 of their Schedule A/B, which asked the Defendants whether they own any business-related property, the Defendants answered no. (Id.) In response to question 4 of their SOFA, which asked the Defendants whether they had any income from operating a business during the year of the bankruptcy filing or the two previous calendar years, the Defendants did not list any such income. (Id.) In response to question 27 of the SOFA, which asks a debtor whether they owned a business (and specifically includes someone who is "a sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time") during the four years prior to the bankruptcy filing, the Defendants indicated no. (Id.)

Prior to their May 31, 2019 section 341 meeting of creditors, the Defendants furnished their 2016, 2017, and 2018 federal income tax returns to the Chapter 7 trustee (the "Tax Returns").

(Pl.'s Exs. 9, 10, and 11). Mrs. Brooks prepared the Tax Returns using Turbo Tax. Attached to each of the Tax Returns is a Schedule C, titled "Profit or Loss from Business (Sole Proprietorship)." (Id.) Each of the Schedules C reflects that Mrs. Brooks operated a daycare business as a sole proprietor. (Id.) Each of the Schedules C claims zero in gross income but reflects a significant net loss. (Id.) The 2016 Schedule C claims a $15,490 net loss comprised of the following expenses: $500 for advertising; $11,340 for car and truck expenses; $750 for supplies; $500 for taxes and licenses; and $2,400 for utilities. (Pl.'s Ex. 9). The 2017 Schedule C claims a $17,570 net loss comprised of the following expenses: $800 for advertising; $11,770 for car and truck expenses; $500 for supplies; $500 for taxes and licenses; and $4,000 for utilities. (Pl.'s Ex. 10). The 2018 Schedule C claims a $19,825 net loss comprised of the following expenses: $600 for advertising; $13,625 for car and truck expenses; $600 for supplies; $500 for taxes and licenses; and $4,500 for utilities. (Pl.'s Ex. 11). As a result of the approximate $53,000 in claimed losses, the Defendants received $12,541 in refunds from the Internal Revenue Service that they would not have otherwise received. (Defs.' Exs. 4, 5, and 6).

On August 3, 2019, the United States Trustee filed an Amended Notice of Taking 2004 Examination of [Defendants] which scheduled a 2004 examination of the Defendants for September 18, 2019 (the "2004 Notice"). (Pl.'s Ex. 6). The 2004 Notice included an addendum which requested a number of documents that would verify the existence of a daycare business and correspond to the deductions on the Defendants' tax return, including: 1) a roster of clients; 2) a general ledger itemizing all gross receipts and payments received by the Defendants for the daycare services and expenses; 3) proof of payments from clients; 4) profit and loss statements; 5) copies of car and truck expenses for the daycare; 6) copies of expenses for supplies; and 7) copies of utility bills, payments, and computation of utility expenses for the daycare. (Id.)

Mrs. Brooks testified at the 2004 Examination that she works at Bank of America's technical help desk and that her job duties involve assisting the bank's clients with navigating global commercial systems. (Pl.'s Ex. 8). She also testified that she opened the daycare business in 2015 or 2016 and closed it in July of 2018. During that time, Mrs. Brooks provided child-care for the children of neighbors and relatives and cared for as many as 7-10 children at a time. Mrs. Brooks was paid in cash and charged $75 to care for a child for one night and $100 to care for a child for the weekend. Mrs. Brooks expressed confusion as to the difference between revenue and net income. However, the Defendants failed to explain how they arrived at the amounts they listed as expenses on the Tax Returns.

The Defendants did not bring the requested documents to the 2004 Examination and admitted that they did not exist. Although the Defendants eventually produced a number of bank statements, the bank statements appear to include ordinary consumer expenses, and the Defendants made no effort to explain how the statements relate to the daycare business. (Pl.'s Ex. 17). The Defendants also produced emails from three parents who indicated that they paid Mrs. Brooks to care for their children during the summer of 2018 and two emails from parents who indicated that they paid Mrs. Brooks to care for their children "during the summer," with no date provided. (Pl.'s Ex. 16). After the United States Trustee filed the complaint objecting to the Defendants' discharge, the Defendants filed amended tax returns which simply deleted the daycare business. (Defs.' Exs. 4, 5, and 6). The Defendants did not appear at the trial.

### Conclusions of Law

"In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). The Bankruptcy Code favors discharge of the

honest debtor's debts and provisions denying a debtor's discharge are construed liberally in favor of the debtor and strictly against the creditor. Cohen v. McElroy (In re McElroy), 229 B.R. 483, 487 (Bankr. M.D. Fla. 1998). However, there are limitations on the right to a bankruptcy discharge. Id. "Section 727 ... provides that a debtor shall be granted a discharge unless one or more of twelve enumerated reasons to deny the discharge exists." Menotte v. Hahn (In re Hahn), 362 B.R. 542, 546 (Bankr. S.D. Fla. 2007). The Plaintiff objects to the Defendants' discharge pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(A).

**Section 727(a)(3)**

Section 727(a)(3) of the Bankruptcy Code provides for the denial of a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). The purpose of section § 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge. See PNC Bank v. Buzzelli (In re Buzzelli), 246 B.R. 75, 95 (Bankr. W.D. Pa. 2000) (citing Meridian Bank v. Alten (In re Alten), 958 F.2d 1226 (3rd Cir. 1992)). This statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. Meridian Bank, 958 F.2d at 1230. "Section 727(a)(3) does not require a full accounting of every business transaction, but 'there should be some written records, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy.'" In re Khanani, 2005 WL

2482392, at *6 (Bankr. M.D. Fla. Sept. 27, 2005) (quoting In re Sowell, 92 B.R. 944, 947 (Bankr. M.D. Fla. 1988)).

A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Meridian Bank, 958 F.2d at 1232. Once a creditor shows that a debtor's records are inadequate, the burden shifts to the debtor to justify such inadequacies. Id. at 1233. In determining whether a debtor's inadequate recordkeeping is justified, a trier of fact must consider all of the circumstances of the case. Id. at 1231. Such justification "depends largely on what a normal reasonable person would do under similar circumstances" and the relevant inquiry should consider the debtor's education, experience, and sophistication "and any other circumstances that would be considered in the interest of justice." Id. "The failure to keep records must be determined on a case-by-case basis, and a debtor's failure to keep records is not an absolute bar to a discharge." In re Bryant, 1997 WL 375692, at *3 (Bankr. M.D. Fla. Apr. 30, 1997).

The Court finds that the Plaintiff met her initial burden of establishing that the Defendants failed to keep recorded information from which their business transactions could be ascertained. During the three-year period from 2016 to 2018, the Defendants claimed an approximate $53,000 loss on their income tax returns related to a daycare business for which they maintained no records: no roster of clients; no ledger itemizing gross receipts and payments received and expenses incurred; no copies of truck and car expenses for the daycare; no copies of expenses for supplies; and no copies of utility bills, payments, and computation of utility expense for the daycare.

The Court finds that it would be difficult, under any circumstances, for the Defendants to justify the fact that they kept virtually no documentation to substantiate an approximate $53,000

loss spanning a three-year period, which resulted in $12,541 in refunds from the Internal Revenue Service that they would not have otherwise received. Additionally, the Defendants failed to appear at the trial to offer any explanation. The Defendants' explanation in their post-trial brief that Mrs. Brooks did not understand tax laws, accounting, or any other sophisticated business management concepts is unconvincing. Mrs. Brooks is a business analyst who works at Bank of America's technical help desk assisting the bank's clients with navigating global commercial systems. The Court concludes that the Defendants failed to meet their burden of justifying their failure to maintain adequate records and will deny their discharge pursuant to § 727(a)(3).

### Section 727(a)(4)

Section 727(a)(4)(A) provides for denial of a debtor's discharge if he "knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). "[T]he very purpose of ... § 727(a)(4)(A) is to [ensure] that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction ... Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987). A party seeking the denial of a discharge pursuant to § 727(a)(4)(A) must establish the following elements: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. Shappell's, Inc. v. Perry (In re Perry), 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000). A false oath may involve a false statement or omission. Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. B.A.P. 1999).

The Court finds that the Defendants knowingly and fraudulently made a material false statement under oath when they indicated on their SOFA that did not own a business (which included being a sole proprietor or self-employed in a trade, profession, or other activity, either full time or part time) during the four years prior to the bankruptcy filing. The Court simply cannot attribute the omission of Mrs. Brooks' day care business to inadvertence when, no more than three months before they filed their bankruptcy petition, the Defendants filed their 2018 tax return claiming an approximate $20,000.00 loss resulting from the business. Moreover, the Defendants failed to appear at trial to offer any explanation. Accordingly, the Court will deny the Defendants' discharge pursuant to § 727(a)(4).

## Conclusion

The Defendants failed to maintain and preserve adequate records, and such failure makes it impossible to ascertain the Defendants' financial condition and material business transactions. Additionally, Defendants knowingly and fraudulently made a material false statement under oath in connection with this case. The Court will deny the Defendants' discharge pursuant to §§ 727(a)(3) and 727(a)(4)(A) of the Bankruptcy Code. The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.